We're going to move now to Appeal 22-1349. This is United States v. Christopher Truett. We're going to begin with oral argument from Mr. Leon. Thank you, Your Honor, and may it please the Court. This Court should vacate and remand for at least two reasons. First, the District Court committed a due process violation when it failed to order a competency hearing under 18 U.S.C. 4241. And second, the District Court plainly erred when it failed to render three particularized findings under U.S.S.G. 1B1.3S to the drug quantity. Mr. Leon, with regard to the sentencing, what should Judge Hanlon have picked up on at the sentencing timeframe as to why a competency hearing was necessary? For the sentencing, I think we have two crucial things happening. One, we know that at that time, Truett can think, reason, and understand only to the ability of a 10-year-old. That's undisputed medical evidence in the record. Second, we know that his counsel came up to the podium and said, Truett cannot remember strategic conversations with me regarding this sentencing hearing. And that's flat-out evidence of an inability to meaningfully assist counsel. So those two things in combination, I think, combined with counsel's statement that his client may need to be put in a memory-impaired unit, and the BOP was a flashing alarm. The memory-impaired issue cuts both ways, right? Because obviously the Court, counsel for the government, and defense counsel all are discussing this as part of the potential disposition that the topic wasn't being hidden. The topic was right there for everyone. Isn't there a distinction between that and the topic is so strong that we can't go forward with the sentencing today? Well, I think we have to look at the case law to answer that question, and this Court has rejected trial counsel's view, the district court's view, and the prosecutor's view in multiple cases. And I would point the Court to Graves, Anderson, and Brown v. Stearns. And I think Graves is a helpful example. That was an Anders briefcase. And this Court remanded for a sua sponte hearing under 4241. And I think what's really happening in this case and why Truett slipped through the cracks is that his counsel had an incorrect view of competency. His counsel thought that if you are in touch with reality, you're competent. But being in touch with reality is not the same as being incompetent. You can know where you are. You can know that you're a judge, that I'm a defense counsel, but that doesn't mean that you can meaningfully assist your counsel. That doesn't mean that you can rationally understand the proceedings and make those few trial-related decisions that this Court discussed in Newman. So I think that's why the district court should have picked up on something. And remember, the test here is not whether the district court had enough evidence in front of it to deem Truett incompetent. That's not the question here. The question is, was there a reasonable cause? You know, like should a district court have paused here, maybe asked a few questions, could have had a preliminary hearing about what's going on with Truett. But it just held by those facts. And I think the change of plea hearing is, and I also, before I go to the change of plea hearing, I want the courts to know that Truett's counsel never said anything about Truett being incompetent at the sentencing hearing. Neither did the district court, and neither did the prosecutor. So there's no statement here at the sentencing hearing that says Truett is competent. It's just passed by. But if you go back to the change of plea hearing, as I was mentioning earlier, we have a lot of undisputed facts that I think the courts should consider. As already mentioned, Truett thinks and reasons like a 10-year-old boy. That's undisputed. Second, Truett suffered a traumatic brain injury in 2016 because someone shot him 10 times all over his body. He developed MCI, and he even told the district court at the change of plea hearing, I have a lot of trouble remembering the past, and I don't know if that's affecting my ability right now. But that's not all. On top of those two, we also have Truett telling the district court, before he pleads guilty and faces up to life imprisonment, I'm not getting my medications. The district court just moves by, and that's not how you go into a federal district court and plead guilty to the crime that Truett did. The district court follows up. The question is whether under an abuse of discretion standard, there was enough follow-up. No, so I think the standard of review here is comprehensive. Garrett squarely answered this question. But that's de novo, is what you're saying. Comprehensive means you're telling us the standard of review in this case is de novo. No, Your Honor, I'm not saying that. What's the difference between de novo and comprehensive? So this court has not explained comprehensive in detail yet, so the president doesn't really answer the question. But I think it is going to be less deferential than the abuse of discretion standard. Why should it not be abuse of discretion? We routinely review matters very similar to this under an abuse of discretion standard. I think, Your Honor, because this is one of the most important things that happens in federal courts, that a person walks up and knows what's going on. And in this context, we're not saying that it's always going to be comprehensive. It's for the change of plea and the sentencing. Because at this stage, the district court's not having much interaction with my client. It's a 30 to 50 minute... Oh, there's a lot of interaction. The district court asked your client a lot of questions. That's right. To determine its competency. Maybe the judge could have asked more about the medication, okay? But the judge asked a lot of questions to determine competency, to figure out whether your client knew what he was pleading to, knew the allegations against him, knew the elements of the offense that the government had to prove. So I do agree that the district court did the typical Rule 11 stuff. But true it's yes sir and no sir answers, as this court has said in multiple cases, they don't really elucidate his state of mind. And I think what does elucidate his state of mind is what he tells the district court. So the district court asks him, do you understand something about the advisory guidelines? True it responds right to the district court, I like you. Yeah, but you're taking that way out of context, in my view. I mean, he said he first misunderstood. He misheard the judge and he thought the judge said revisory. And he said, what is that? I don't even know what that means. That's a good question, right? Then he was explaining, no, it's not revisory, it's advisory. Meaning the judge doesn't have to accept it. And your client says, oh, I like you judge. Yeah, I'd be happy with you sentencing me under advisory guidelines. That's what he's saying. We have this rapport, right? That's clearly what's going on. He's not saying I like you in some other way. No, your honor. I respectfully disagree. What did you think he meant? I think true he's very confused about what's going on at that hearing. And you can't just take that one statement and, you know, out of context. This is a matter. But I think that's what you're doing. No, and what I'm doing is considering who this person is before the district court. Before the district court, we know it's undisputed. This man thinks and reasons like a 10-year-old boy. I don't want you to lose your time. The second point, especially with regard to the three elements. Doesn't he still get back to base offense level 32? Tell us, give us your second argument. Thank you, your honor. So on the second argument, the district court had to find three specific findings under 1B1.3. I think it's easy to conclude on this record that he did. So I think prongs 1 and 2 are done with. And prong 4 under plenary review is not disputed on appeal. So we get to prong 3, which is whether there's a reasonable probability that the sentence could have been different if the district court had rendered these findings. And I think there is here because of two reasons. First, Judge Hanlon put a lot of stock into the quantity here when he analyzed 3553-8. He called it a large quantity. And if true, he could have even gotten five months less because maybe he was responsible for a third or fourth of this drug conspiracy, at least under relevant conduct. That is enough for prejudice. But even if you don't agree with the 3553-8 arguments, I think there's a reasonable probability his guideline range would be different. He gets to 30. And the reason is… His offense level gets to 30, you're saying? His base offense level would start at 30, I think, instead of 32. So he would get a minus 2 reduction, which puts him at a guideline range in which he doesn't get the sentence that he does now, assuming the district court gave him a guideline sentence. Is that based upon some anchoring argument? Or why do you think the sentence would have been lower? Because I don't think he is responsible for at least 3.3 pounds of drugs. And there's a reasonable probability the district court would find otherwise. When Truitt made these phone calls – and that's his gist of the case. He made a few phone calls to a guy to get some drugs to his girlfriend. When Truitt made those calls, he was the middleman. That would be relevant conduct. Well, that's disputable, by the way. That's disputable that he was the middleman. I don't think that's what this case was about. I don't think that's what the judge found. He was in the middle because he was in jail. But that doesn't make him the middleman in the drug transaction. And the judge could have found he's responsible for everything because he is the one that is running the drug trade. So, yeah, I think he is running it as to the drugs that he orders, Your Honor. So I put a – in my reply brief, I put a chart to show that there are really three lines coming from Corey Kelly. And when the line starts with Truitt, that would be relevant conduct. But when the line doesn't start with Truitt, there's nothing in the record to show that it would be relevant conduct. And even the government superseding indictment only ascribes less than one pound of meth to Truitt. And it has to show at least 3.3 pounds to get him across the threshold to get the base offense level of 32. We're going to give you some rebuttal time, Mr. Leon. Thank you, Your Honor. So thank you. I appreciate it. Thank you. We're going to now move to Mr. Waringa. May it please the Court, Julian Waringa on behalf of the government. I want to note initially that Mr. Truitt, both in his briefing and in his argument just now, refers to undisputed facts regarding Mr. Truitt's mental capability and function. And there were no judicial findings on that question. And so there were allegations and there were representations and there were medical records that were before the court that were relevant to the court's consideration of this mental capability issue. But there were not findings of fact from the court. So to characterize that evidence, the medical records, and the allegations from Dr. Polly Westcott and the psychological report as undisputed facts is inaccurate with respect to this case. I wanted to address next the fine issue with respect to the argument that it was not a mandatory condition of supervised release. And the first thing that I wanted to note is that from an equitable standpoint, this issue is prospectively moot. The Bureau of Prisons has been having Mr. Truitt pay this fine in $25 quarterly increments, and he's already paid $50 out of the $250, and he has another over 11 years left in his sentence. So on the current schedule, he will have fully paid the fine more than nine years before he's released. So it's highly unlikely on the current schedule that this would ever come into play. The other thing that I wanted to note on the fine issue is that both Mr. Truitt and the government in their briefing have discussed the Sentencing Commission's determination that it is a mandatory condition of supervised release, the timely fine payment, and both Mr. Truitt and the government have noted that ultimately, the Sentencing Commission's determination relies on 18 U.S.C. 3613A. And Mr. Truitt, in his brief, argues that the fact that 18 U.S.C. 3613A uses the term may in discussing whether the district court can revoke supervised release if a defendant, an inmate, fails to timely pay his fine. Mr. Truitt argues that the use of that may term means that it can't be a mandatory condition of supervised release. But the core statute regarding mandatory conditions of supervised release, 18 U.S.C. 3583, for the overwhelming majority of the mandatory conditions of supervised release that it discusses, it uses the exact same term. There's only a handful of mandatory conditions under which the district court has no discretion and must revoke supervised release. And so the use of the term may in 3613A is on all fours with the terminology that Congress has used in other instances where nobody disputes that it was creating a mandatory condition of supervised release. Mr. Waring, if you could address the competency at sentencing issue. Yes, I think they're – the reason I bring it up is his longtime counsel is this attorney, Martin. Martin says there's 14 months between the plea and the sentencing. I've seen changes, and they've not been for the better. Yes. So there's multiple reasons that there was no reason for the district court to have concern. He – the longtime counsel stated, I don't have any concerns. He made the affirmative representation at the plea hearing that there was no concern about competence. He was ready to go forward. He'd had a detailed discussion, and he was confident that his client was competent. And obviously, this court's precedent says that a lot of weight can be placed on the representation of counsel. And Mr. Martin never revisited that determination. He never raised it. He never said, you know, I see these issues with respect to his memory. That leads me to think he can't meaningfully participate in these proceedings. And the other things that were before, in addition to Mr. Martin's representation, the district court had multiple things before it that would have allayed any sort of nascent concerns that it might have had. One of the things is just the nature of the crime. This is not a simple crime. It's an administratively complex crime. Mr. Truitt initiated a drug-dealing business from prison, and he was ordering the drugs. He was arranging for the delivery of drugs. He was following up when people weren't paying for the drugs to make sure that payments were being received. And then in addition to that, there's Mr. Truitt's behavior at the proceedings themselves. And as Judge Kirsch mentioned, this is a highly engaged defendant. This is a defendant who's participating attentively. He's listening to the details of the proceedings, and he's reacting to them in a way that shows that he's fully present and he understands what's happening. So for all of those reasons, the district court had no reason for concern regarding competence. I think on the drug amount issue, the one thing I would note is that Mr. Truitt makes a lot of argument regarding the he does a close reading of the content of the indictments and argues that that somehow governs what happened here in terms of how much of the drug trafficking Mr. Truitt was responsible for. But the indictments don't control what the government would have represented at trial. And when it came to sentencing, Mr. Truitt repeatedly admitted directly himself to the court and also through his counsel that to the description that the government provided and that was contained in the PSR, stating that he was responsible top to bottom. He had awareness of everything, and he had oversight of everything. So there simply is no way, there's no suggestion in the record that under any reading of the facts and the admissions that he could have got below half of the traffic drug amount. So play this out for us. There's Act 6 and Act 7. There's implication with regard to the pound within three ounces. Put the three ounces to the side. With regard to the pound, you're indicating even if we were to disaggregate that from the remainder, he'd still be at the same base offense level? Well, the accounts of the drug dealing that are relevant here is the summary that's contained in the PSR and what Mr. Truitt admitted to at the sentencing hearing and what his counsel described and what the government described and what Mr. Truitt assented the government would be able to show if the case went to trial. And all of those descriptions say that he was responsible for all of it. Well, he does speak up at one point and say he doesn't know that one individual. That's correct, Your Honor. There is one person and a bottom level dealer that his girlfriend would have transmitted stuff to, and he says, I don't know about her, but everything else I agree with that the government has summarized. And in those summaries, the government is speaking comprehensively. There's no exclusion or limitation or suggestion that he had only a partial involvement. The final thing that I wanted to note is just with respect to the standard of review question on the competence issue, the government, of course, believes that that doesn't have any ultimate relevance to the analysis because under either standard, the district court reached the right result and there was no reason for concern regarding competence. I do want to note that in my brief, I said there was no case after 1991's United States v. Collins that used a comprehensive review. I did find one more in preparing for this argument, and that's United States v. Ross, 510 F. 3rd, 702, and that's from 2007. But it's nonetheless clear that the overwhelming trend of this court's jurisprudence on this question is to use the abuse of discretion standard. And one of the cases that Mr. Truitt relies on in his argument that this court somehow employs a bifurcated standard of review on this question is 2016's United States v. Stahler. And Mr. Truitt argues that that case appropriately used an abuse of discretion standard of review because there was a psychological report before the court in that proceeding. But in fact, Stahler precisely parallels the circumstances we have here where in Stahler, the district court's decisions were challenged in terms of accepting a plea and then its failure to order a competency hearing after the plea was entered and the defendant was considering withdrawing it. And at the time Mr. Stahler entered his plea, there was no psychological report before the court. There was after he entered his plea. At that time, his counsel obtained a psychological report. And in Stahler, this court reviewed both of those phases under an abuse of discretion standard. And that's exactly the circumstance we have here where there was not a psychological report before the district court at the time Mr. Truitt entered his guilty plea. But after he entered his plea, his counsel obtained a report from Dr. Polly Westcott and he cited that report in his sentencing submission and he cited it repeatedly in his brief. And so Stahler, in fact, supports the application of the abuse of discretion standard under both phases of the decision-making that is at issue here. Unless your honors have any further questions, the government rests on its brief and asks that the court affirm the district court's judgment. Thank you very much, Mr. Waringa. We'll now move Mr. Leon to you. I'm going to give you three minutes. Thank you, your honor. A few points in response. First, the government says that trial counsel at sentencing said nothing about competency. But that's because he was using the wrong test. Why would he say anything about competency if he's conflating being in touch with reality and competency? So I think that's why trial counsel said nothing at the sentencing. What he did say at the sentencing was potent. He said, this is the lowest functioning client that I can remember in my career and that he can't remember what I'm telling him in regards to what we would talk about at the sentencing hearing. That's prima facie evidence of not being able to assist his counsel. If someone can only think and reason like a 10-year-old and can't remember what his counsel is saying, that's reasonable cause. But if the court doesn't want to write their opinion on competency or write their order on competency, there's another reason to reverse and remand here, and that's the drug issue. And if the court does reverse on that issue, guaranteed, Truitt will move for examination before resentencing. And I want to point out the government says that the drug amount would be the same no matter what. But the government gave the same base offensive level to every person in this conspiracy, and then it got them to waive appeal, all of them except Truitt. What happened here is the government picked a number and didn't apply USSG 1B1.3. Truitt is the only person who could appeal, and he has pointed out this issue that no one applied the correct guideline provision. And there is evidence or at least an indication of a reasonable probability that his guidelines range would change. We have the superseding indictment. The government says, well, maybe we didn't put everything in the superseding indictment. But everything Truitt did here was based on a phone call. I don't think the superseding indictment is going to leave out the haymakers and didn't just put in the minor details that Truitt did. And last, talking about the fine issue, the government says that Truitt will have paid this fine in 10 years, but now that this court vacates it, he won't have to pay anymore. So the issue is not moved. And any evidence the government talked about up here about the BOP is not in the record and should not be considered. For the reasons in the brief, I ask the court to please vacate and remand so that Truitt can see a doctor. It doesn't matter whether it's under the competency issue or the drug issue. Thank you, Your Honor. Thank you, Mr. Leon. Thank you, Mr. Wierenga. The case will be taken under advisement.